IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:15-CV-00034-BO

| | |
|---|---|
| LYNDA A. DIMAURO,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | **ORDER** |

This matter is before the Court on the parties' cross-motions for judgment on the pleadings [D.E. 11, 17]. For the reasons detailed below, plaintiff's motion is GRANTED and defendant's motion is DENIED. The decision of the Commissioner is REMANDED for an award of benefits.

## BACKGROUND

Plaintiff protectively filed an application for disability insurance benefits on December 23, 2011, alleging a disability beginning on September 17, 2008, subsequently amended to August 26, 2009. The claim was denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") via video-conference on September 9, 2013. In a decision dated December 10, 2013, the ALJ found that plaintiff was not disabled. Tr. 14–23. The Appeals Council denied plaintiff's request for review on December 31, 2014, rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 3–6. Plaintiff commenced this action and filed a complaint pursuant to 42 U.S.C. 405(g) on March 2, 2015. [D.E. 1].

## MEDICAL HISTORY

Plaintiff broke her right arm in a fall at work in September 2008. She underwent right elbow diagnostic arthroscopy, right elbow arthroscopic loose body removal, and a right elbow arthroscopic capitellar microfracture procedure in October 2008. She subsequently had right ulnar nerve transposition surgery in December 2010. Since that time, she has suffered from reflex sympathetic dystrophy ("RDS"), also known as complex regional pain syndrome ("CRPS"). As a result of this condition, plaintiff has hypersensitivity down her arm, curling of her fingers with paresthesia, and little sensation in her fingers. She experiences pain and swelling and cannot bear anything touching her arm, even clothing or jewelry. She stated that she cannot even lift a cup of coffee. Despite treatment with a pain management specialist, her pain has worsened over time. She stated that the medication she takes for pain has affected her ability to concentrate.

Plaintiff also has a history of back surgery in 2003. She is also diabetic. Her diabetes was previously well-controlled with medication. However, she reported that her pain and medications have impaired her ability to regulate her blood-sugar levels.

## DISCUSSION

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed.

2

*Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's residual functional capacity ("RFC") is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

After finding that the plaintiff had not engaged in any substantial gainful activity since her alleged onset date at step one, the ALJ determined that plaintiff's conditions of status post fracture of the right upper extremity with nerve damage, history of back surgery, and diabetes were severe impairments at step two. Tr. at 16. The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or equaled a listing at step three. *Id.* The ALJ determined that the plaintiff had an RFC to perform light work with the following

3

exceptions: can occasionally push and pull with the dominant right upper extremity; can never climb ropes, ladders, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl; can occasionally handle (gross manipulation), finger (fine manipulation), and feel with the dominant right upper extremity; and should avoid concentrated exposure to moving or dangerous machinery and unprotected heights. *Id.* at 17. At step four, the ALJ found that plaintiff was unable to perform her past relevant work as a nurse or nurse supervisor. *Id.* at 22. At step five, the ALJ found that, considering her age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that she was capable of performing, including furniture rental clerk, usher, and counter clerk. *Id.* at 23. Thus, the ALJ found that plaintiff was not disabled as of the date of her decision. *Id.*

Here, substantial evidence does not support the ALJ's determination. The error lies in the ALJ's consideration of the medical opinion evidence. An ALJ makes an RFC assessment based on all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). The opinion of a treating physician must be given controlling weight if it is not inconsistent with substantial evidence in the record and may be disregarded only if there is persuasive contradictory evidence. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987); *Mitchell v. Schweiker*, 699 F.2d 185 (4th Cir. 1983). Even if a treating physician's opinion is not entitled to controlling weight, it still may be entitled to the greatest of weight. SSR 96–2p.

In May 2009, plaintiff's first treating orthopedist, Dr. Edward Brown, placed her at maximum medical improvement, gave her a 13 percent disability rating, and limited her to work with only one hand. Tr. at 225–43. Dr. Deanna Boyette, also a treating orthopedist, similarly opined in December 2011 that plaintiff had reached maximum medical improvement, that she

4

had a 20 percent disability rating, and that she had permanent work restrictions limiting her to light duty with no use of the right upper extremity and no lifting. *Id.* at 327.

The ALJ dismissed these opinions. Without assigning any weight, the ALJ noted that Dr. Brown's opinion preceded the amended onset date by three months. *Id.* at 19. She also gave Dr. Boyette's findings only partial weight, finding they were inconsistent with a November 2011 Functional Capacity Evaluation ("FCE"). *Id.* at 20. The FCE, to which the ALJ gave significant weight, found that plaintiff could lift up to nine pounds with her right upper extremity and up to 19 pounds with both hands. *Id.* at 272–88. However, as plaintiff points out, during the FCE, she was grimacing and remarked that she was experiencing pain. Plaintiff also reported that the FCE examiner informed her she would be deemed noncompliant if she limited her tasks during the exam because of pain. *Id.* at 203. The medical evidence further demonstrates that both Dr. Boyette and Dr. Tellis observed significant exacerbation of plaintiff's pain symptoms following the FCE. *Id.* at 325–26, 526. This evidence suggests that the FCE failed to accurately reflect plaintiff's limitations.

The ALJ also afforded significant weight to an independent medical examination ("IME") performed by Dr. Scott Sanitate in April 2010. Dr. Sanitate noted that the overall exam was "relatively benign," although she had hypersensitivity over the superficial radial nerve distribution. He assessed superficial radial neuropathy and opined that she could perform light work. However, Dr. Sanitate is a one-time examiner who made his assessment prior to plaintiff's second surgery. Additionally, contrary to Dr. Sanitate's diagnosis, plaintiff's pain management specialist, Dr. Angelo Tellis, continued to diagnosis plaintiff's condition as CRPS. Notably, the ALJ gave significant weight to Dr. Tellis's findings.

5

Moreover, the opinions of Drs. Brown and Boyette are consistent with the medical statement of Dr. Tellis. Plaintiff regularly reported pain of 5 out of 10, increasing to 7 out of 10 by October 2012. In December 2011, Dr. Tellis, found that plaintiff was limited to lifting less than 5 pounds with her right arm and that she was limited to grasping, turning, and twisting objects and perform fine manipulations only 2 hours in an 8 hour workday. *Id.* at 486. Thus, all three of plaintiff's treating providers opined that plaintiff's use of her right upper extremity was significantly impaired.

The ALJ's decision to discount the opinions of Drs. Brown and Boyette, and to ignore the lifting restriction determined by Dr. Tellis, are determinations unsupported by substantial evidence. The Court concludes that the diagnoses, treatment, prognosis and limitations assessed by plaintiff's treating providers provide a consistent, comprehensive, and longitudinal assessment of her condition. Under the factors listed in 20 C.F.R. § 404.1527(c), their opinions are deserving of more weight than the opinions of two, one-time examiners.

The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one which "lies within the sound discretion of the district court." *Edwards v. Bowen*, 672 F. Supp. 230, 236 (E.D.N.C. 1987). The Fourth Circuit has held that it is appropriate for a federal court to "reverse without remanding where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974). Remand, rather than reversal, is required when the ALJ fails to explain his reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review." *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013).

6

The Court, in its discretion, finds that reversal and remand for an award of benefits is appropriate in this instance. Plaintiff's treating physicians limited her to work with only her left upper extremity. The VE testified that such a limitation would preclude all substantial gainful activity. Tr. at 30. Accordingly, there is no benefit to be gained from remanding this matter for further consideration and reversal is appropriate.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgement on the pleadings is GRANTED, the defendant's motion for judgment on the pleadings is DENIED. The decision of the Commissioner is REMANDED for an award of benefits.

SO ORDERED.

This __19__ day of ~~March~~ February, 2016.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE